UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALYSHA A. GEE,<br><br>                            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                            Defendant. | Case No. 3:14-cv-05777-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On March 8, 2011, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 2009. *See* Dkt. 11, Administrative Record ("AR") 14. That application was denied upon initial administrative review on May 31, 2011, and on reconsideration on August 24, 2011. *See id*. A hearing was held before an administrative law judge ("ALJ") on January 16, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See*

ORDER - 1

AR 35-66.

In a decision dated February 27, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 14-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 1, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 416.1481. On October 7, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on March 23, 2015. *See* Dkt. 11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for further administrative proceedings because the ALJ erred: (1) in evaluating the opinion evidence from Gerald Cavanee, Ph.D., Shannon Kolakowski, Psy.D., and Aaron Green, M.D.; (2) in discounting plaintiff's credibility; and (3) in assessing plaintiff's residual functional capacity ("RFC"). For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinion evidence from Dr. Cavanee and Dr. Kolakowski, in discounting plaintiff's credibility and in assessing plaintiff's RFC, and thus in determining plaintiff to be not disabled. The Court therefore finds that defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*,

ORDER - 2

359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      The ALJ's Evaluation of the Medical Opinion Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

ORDER - 4

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.     Dr. Cavenee

In mid-February 2011, plaintiff was evaluated by Dr. Cavanee, who opined that she was severely limited in her ability to maintain appropriate behavior in a work setting and markedly limited in her ability to learn new tasks, and communicate and perform effectively in a work setting with public contact. *See* AR 406. The reasons the ALJ provided for giving Dr. Cavenee's opinion little weight were that it was "not consistent with [plaintiff's] treatment record or her performance during the mental status examination." AR 23. The Court agrees with plaintiff that these were not specific and legitimate reasons for doing so.

First, the ALJ fails to explain why he found Dr. Cavenee's opinion to be inconsistent with plaintiff's treatment record. To the contrary, the record in this case contains objective clinical findings that certainly could be supportive of that opinion. *See* AR 474 ("appears to be attached to unusual experiences and very suggestible"), 502 ("has flight of ideas, has poor insight"), 505 ("scattered historian, gives excessive and circumstantial answers"), 547 ("anxious,

ORDER - 5

confused," "very tangential, disorganized," "fair/poor [concentration], sometimes unable to follow the flow of simple conversations") 551 (evidenced "bizarre" behavior, flight of ideas and psychomotor agitation; "speech was rapid, pressured, hyper-verbal and circumstantial," "little" insight), 564 ("tangential, poorly-organized thought processes," "uneven" memory, "poor/severely impaired" concentration, "uneven" abstract thought, "very easily confused").

Second, Dr. Cavanee himself made observations that are supportive of his opinion as well. *See* AR 406 ("Serious issues in keeping her focus were seen in this evaluation."; "Some pressure in speech and tangential thinking evident."); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion that is based on clinical observations supporting diagnosis of depression is competent evidence). As such, neither of the ALJ's stated reasons for rejecting Dr. Cavenee's opinion withstand scrutiny, and therefore the ALJ erred here.

B.  Dr. Kolakowski

In early October 2012 Dr. Kolakowski completed a psychological evaluation report, with respect to which the ALJ found:

> Little weight is given to the opinion of Shannon Kolakowski, Psy.D. (Exhibit 13F). Dr. Kolakowski opined that the client's ability to do work related activities may be impacted by her inability to concentrate, problem solve and adapt to new situations, problems with memory, deficits in reality testing, impaired frustration and repeated periods of decompensation in a work setting. Dr. Kolakowski indicated that the claimant's MMSE [mini-mental state exam] score of 22/30 indicates some impairment of her cognitive functioning and impairment in her memory, with 23 being the cut off score. However, Dr. Kolakowski acknowledged that despite these impairments, the claimant displayed the ability to perform most activities of daily living, maintain some positive social interactions, and attend important appointments. Dr. Kolakowski opined that the claimant's prognosis was guarded but noted that the claimant was not taking any mental health medications at the time of the interview and was not open to a medication regimen although Dr. Kolakowski felt that the claimant would benefit from structured individual therapy to address psychological symptoms, mood regulation and coping skills. Dr. Kolakowski also assessed the claimant to have a global assessment of functioning (GAF) score of 45 indicative of serious symptoms according to

ORDER - 6

>the Diagnostic and Statistical Manual of Mental Disorders, IV (DSM-IV), Page 32, Multiaxial Assessment). Little weight is given to this opinion as Dr. Kolakowski based much of her assessment on the claimant's subjective reports regarding her symptoms and the claimant's propensity to malinger in this area is strongly supported by the claimant's longitudinal record. Furthermore, Dr. Kolakowski noted that the claimant was not receiving appropriate mental health treatment at the time of the interview and was not open to doing so. This indicated that the claimant's symptoms were likely not as severe as she has alleged.

AR 24-25. Plaintiff argues the ALJ erred in giving only little weight to Dr. Kolakowski's opinion for these reasons. Again, the Court agrees.

While Dr. Kolakowski clearly based her opinion to some extent on plaintiff's own self-reporting, she also based it on the mental status examination results she obtained as well as on her own observations, and there is no clear indication Dr. Kolakowski relied more on the former than the latter to do so. *See* AR 551-56; *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (when opinion is not more heavily based on claimant's self-reports than on clinical observations, there is no evidentiary basis for rejecting it) *Sprague*, 812 F.2d at 1232. Further, although a medical source's opinion "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted,'" as discussed below the ALJ erred in discounting plaintiff's credibility in this case. *Morgan*, 169 F.3d at 602 (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989)). Thus, this was not a proper basis for rejecting Dr. Kolakowski's opinion.

The same is true in regard to the ALJ's second stated reason for rejecting it. While Dr. Kolakowski did note that plaintiff was "not currently taking medications" and was "not open to the idea of a medication regimen," (AR 556), Dr. Kolakowski also noted that plaintiff told her psychotropic medications "scare [her] and give [her] seizures," that they give her nightmares – which stop when she stops taking the medications – and that she feels she is allergic to them (AR

ORDER - 7

552). It is improper to discount a claimant's credibility on the basis of failure to pursue medical treatment when he or she "has a good reason for not" doing so. *Carmickle v. Commissioner, Social Security Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *see also* SSR 96-7p, 1996 WL 374186, at *7 (ALJ must not draw inferences about claimant's symptoms and their functional effects from failure to follow prescribed treatment, without first considering any explanations provided or other information in record which may explain that failure).

Lastly, as plaintiff points out, Dr. Kolakowski completed a medical source statement of ability to do mental work-related activities shortly after she issued her evaluation report, in which she indicated plaintiff had marked to extreme limitations in a number of mental functional areas. *See* AR 558-60. As plaintiff also points out, this is significant probative evidence that the ALJ failed to adopt or provide any reasons for rejecting. That error constitutes reversible error on the ALJ's part as well.

II.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also*

ORDER - 8

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The ALJ discounted plaintiff's credibility in part because her "allegations are not consistent with the medical record." AR 22. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Security Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Here, though, while the record may support the ALJ in finding plaintiff's convulsive seizures were well controlled with medication (*see* AR 22), as discussed above the ALJ erred in evaluating significant portions of the medical opinion evidence concerning plaintiff's mental health symptoms and limitations. With respect to those symptoms and limitations, therefore, this is not a valid basis for finding plaintiff to be less than fully credible.

The ALJ also discounted plaintiff's credibility because the record indicated her mental health symptoms "were significantly reduced with proper treatment." AR 21. A claimant's credibility may be discounted on the basis of medical improvement. *See Morgan*, 169 F.3d at 599; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). While there may be some fairly

ORDER - 9

unremarkable mental status examination results in the record and other indications that plaintiff's condition had improved on occsasion (*see* AR 399, 477-78, 504, 522, 547, 549-51, 564, 567-68), there are fairly significant abnormal ones as well, such that it cannot be said the record clearly shows an improvement in her symptoms (*see* AR 406-07, 474, 477-78, 502, 505, 547, 549-51, 564, 567-68). *See also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[W]hile discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

Next, the ALJ found plaintiff's credibility regarding the severity of her symptoms to be "seriously undermine[d]," because the record contains a diagnosis of malingering from one examining medical source, Linda Ford, M.D., in early October 2009, and because another such source, Dana Harmon, Psy.D., noted "possible exaggeration or over-reporting of symptoms" in late October 2012. AR 22, 354, 564. However, the only actual diagnosis of malingering, Dr. Ford's, was made well before the relevant time period in this case. *See* AR 14-16, 354. Further, Dr. Harmon questioned whether the possible exaggeration or over-reporting of symptoms was "from a sense of feeling overwhelmed."[2] AR 564. Other evidence is equally equivocal. *See* AR 474 (indicating plaintiff "clearly" had "some secondary gain" issues, but also was "concerned with getting opinions re various unusual experiences/Sx"); 476 (noting plaintiff's "motivations seem to be largely associated with upcoming court date and getting disability (although she also

---

[2] Dr. Harmon also noted "likely exaggeration and over-reporting of psychiatric symptoms" in late November 2011, but at the same time reported a number of significant abnormal clinical findings in regard to plaintiff's presentation, and specifically indicated plaintiff made "likely good effort" during the mental status examination. AR 547, 549-50.

seems to think something may be wrong with her"); 478 (again noting that while she "clearly has some secondary gain" issues, plaintiff was "not pushing" them, but instead was "very concerned with getting opinions re various unusual experiences/Sx"). Accordingly, this too cannot be said to be a valid reason for discounting plaintiff's credibility.

> The ALJ further found plaintiff to be not entirely credible because:
>
> . . . [D]espite the complaints of allegedly disabling mental health symptoms, the claimant has not taken any medications for those symptoms. Evaluation noted [sic] indicated that the claimant was not open to a treatment plan that included prescription medications. The claimant's reluctance even to try a medication regime indicated that the claimant's symptoms were not as severe as she has alleged . . .

AR 22. Failure to assert a good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for supposedly excruciating pain).

As discussed above in regard to Dr. Kolakowski's opinion, however, the ALJ did not first consider whether plaintiff had "a good reason for not" taking prescribed medications. *Carmickle*, 533 F.3d at 1162; *see also* SSR 96-7p, 1996 WL 374186, at *7. For example, also as discussed above, plaintiff told Dr. Kolakowski that her psychotropic medications "scare [her] and give [her] seizures," that they give her nightmares and that she feels she is allergic to them. AR 552. On the other hand, plaintiff told one provider that she was interested in alternative treatment options (*see* AR 473), and informed another one that "natural" medications helped her with her

ORDER - 11

anxiety, indicating she was not adverse to *all* treatment modalities (AR 504; *see also* AR 522 ("She is currently being treated with natural meds, which have been helpful.")). Dr. Cavenee noted as well plaintiff's "[o]pposition to most psychoactive medications due to poor experience." AR 407. Plaintiff also provided similar testimony at the hearing. *See* AR 48-49. The ALJ's failure to address this evidence prior to discounting plaintiff's credibility on the basis of lack of prescribed medication was error.

Lastly, the ALJ discounted plaintiff's credibility for the following reasons:

> The claimant's reported activities also shed doubt on her allegations. The claimant is able to live an independent lifestyle, perform self-care, cook simple meals, do laundry and perform light cleaning (Exhibit 6E). In addition, the claimant reported that she frequently stays with friends and is able to ride the bus and grocery shop in public stores (Exhibit 6E/5).
>
> . . . [T]he record reflects work activity after the claimant's application date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's activities have, at least at times, been somewhat greater than she has generally reported. Such inconsistencies and contradictions erode the credibility of the claimant's allegations of total disability.

AR 22. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." *Id.* Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." *Id.* In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722.

ORDER - 12

Under the second ground in *Orn*, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639. Here, the Court agrees with plaintiff that the record fails to show she engaged in household chores or other activities – including the work activity noted by the ALJ – for a substantial part of the day or at a frequency or to an extent that necessarily shows those chores or other activities are transferrable to a work setting or inconsistent with her other testimony. *See* AR 43-44, 60-61, 301-05, 554. The ALJ, therefore, failed to provide valid reasons for discounting plaintiff's credibility concerning her mental health symptoms.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing

ORDER - 13

a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found plaintiff had the mental residual functional capacity to perform simple, routine unskilled work. *See* AR 19. But as discussed above, because the ALJ erred both in evaluating the medical opinion evidence in the record and in discounting plaintiff's credibility, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's mental functional limitations, and therefore cannot be said to be supported by substantial evidence.

IV.     The ALJ's Step Four and Step Five Findings

Plaintiff has the burden at step four of the sequential disability evaluation process to show that she is unable to return to her past relevant work. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). If a claimant cannot perform his or her past relevant work at that step, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines. *Tackett*, 180 F.3d at 1100-1101; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See*

ORDER - 14

*Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing the same mental functional limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. *See* AR 63-64. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform both her past relevant work as well as other jobs. *See* AR 64. Based on the testimony of the vocational expert, the ALJ found plaintiff was not disabled at step four of the sequential disability evaluation process and in the alternative at step five thereof as well. *See* AR 25-26. Again, however, because the ALJ erred in assessing plaintiff's RFC, it cannot be said that the ALJ's step four and step five findings are supported by substantial evidence and thus free of error.

V. <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further

ORDER - 15

administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record, plaintiff's RFC and plaintiff's ability to perform both her past relevant work and other jobs existing in significant numbers in the national economy, reversal and remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 23rd day of July, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 16